RICHARD Q. BOWLING AND WIFE *vs.* MAREIN T. LAMAR, ADM'R C. T. A. OF JAMES LAMAR.—*December* 1843.

Where a legatee interposes the plea of limitations to the final passage of an administrator's account of the payment of the assets of the estate to creditors, no decree or order which the orphans court might pass in the premises, would divest the courts of law of jurisdiction over the same subject matter; and the fact of the administrator being a creditor, claimant, does not change the nature of the case.

The plea of limitations (technically considered as such,) is not applicable to proceedings before the orphans court, in relation to the claims of creditors. That court may look to the fact of such a bar as evidence to be weighed with all other testimony, in relation to any claim, in determining its justice, and the propriety of passing or rejecting it.

The right to interpose the plea of limitations to claims against a deceased's estate, *before the orphans court,* is vested in executors and administrators by our testamentary system.

The fact that the orphans court has endorsed the claim of an administrator against his intestate's estate, to be allowed when paid, will not prevent the residuary legatee from objecting, before the same court, to the justice of the demand, and requiring full proof of its existence prior to the ratification of the administration accounts, in which he seeks an allowance of his demand as paid.

For want of full proof when demanded, the orphans court may reject any claim against a deceased's estate, after it has been passed and before payment.

After a decree to account, on a bill filed by a residuary legatee against an executor, upon a creditor filing a claim, it is competent for the residuary legatee to plead the act of limitations.

But as to proceedings *at law* by a legatee, distributee or creditor, whether competent for them to defeat the claims of creditors of the deceased, by the plea of limitations, this court intimates no opinion.

The case of *Lee vs. Lee and Welsh,* 6 *G. & J.* 316, is not in conflict with *Stevenson et al, vs. Shriver and wife,* 9 *G. & J.* 324. In the latter case, this court considered the *prima facie* effect of the order of the orphans court, when passed, as evidence coming in collaterally, while in the former cause, the question was whether the orphans court, acting *de novo,* ought to pass such an order at all.

This court will not pronounce upon the rights of a residuary legatee for life, with a bequest over to others, where the record does not contain the will under which the legatee claims.

The orphans court passed certain claims against a deceased's estate; when the administrator came to settle his administration account, the claims were objected to, and full proof of them demanded, but the court allowed them. Upon appeal, this court reversing the decision of the orphans court, remanded the cause without prejudice, with liberty to take further proof.

APPEAL from the *Orphans Court* of *Prince George's* County.

On the 10th December 1842, the appellee offered for passage his *first* account as administrator aforesaid, in which he charged himself with $7,347.75, and claimed an allowance of accounts No. 1 to 41 inclusive, $4,605.36, leaving a balance due the estate of $2,742.28.

The appellants on the 25th April 1843, filed their petition, representing that *James Lamar* died about the 14th May 1838, having made his last will and testament, in which he bequeathed to the petitioner, *Elizabeth,* the wife of the said *Richard,* and sister of the said *James,* all his personal property, during

the term of her single life, (the said *Elizabeth* being then a widow,) and after her death or marriage the said personal estate was given or bequeathed to *Mary E. Childs,* the daughter of said *Elizabeth,* by a former husband, and the niece of the said *James,* as may be more fully seen by reference to said last will and testament, duly admitted to probat and now of record in this court, and which your petitioners pray may be taken as a part of this petition; that some time in the month of October 1841, the appellants were intermarried, by which event the said personal estate became the right and property of the said *Mary E. Childs,* according to the provisions of the said will, and your petitioners were duly appointed guardians to the said *Mary,* and as such have given bond and are duly qualified; that a certain *Marein T. Lamar* has taken out letters of administration, with the will annexed, on the personal estate of the said *James Lamar,* and possessed himself of the entire personal estate of the said *James, but as yet has passed no account whatever with this court;* that they are advised the said *M. T. L.* has filed in this court and presented for passage an administration account, in which he claims credits and allowances for a large sum *as due to him,* the said administrator, from the said testator, *James,* amounting to the sum of $1,547.09, or thereabouts, and claims to be allowed by your honorable court, *to retain in his own* hands enough of the assets of the said testator to pay the same. The petitioners object, as the guardian of the said *M. E. C.,* to whom the residue of the said personal estate belongs, after the payment of all just debts, to the payment or allowance of said account, claimed as due *to* him by the said *James Lamar,* because they charge that the same is unjust, and that the said *J. L.* is not so indebted, and having no other remedy in a case like the present, except by resort to this court, submit that the same ought to be rejected; that the claim is barred by the statute of limitations, is a stale demand, &c., and they call for full proof thereof. Various other claims in said administration account were also objected to on the same grounds, and full proof demanded. Prayer— that the said claims be rejected.

The appellee answered the said petition, denied its allegations in a general way, insisted that he had paid the accounts objected to, and offered to produce full proof as may be required, and also denied the right of the petitioners to plead limitations.

After this the appellee produced proof to the *Orphans' Court*, which need not be more particularly stated, than it is in the opinion of this court; and on the 25th April, 1843, the objections set forth in the petition were overruled and the account of the appellee was allowed and passed, when this appeal was prosecuted.

The cause was argued before STEPHEN, ARCHER, DORSEY, CHAMBERS and SPENCE, J.

By T. F. BOWIE for the appellants, and
By ALEXANDER and PRATT for the appellees.

DORSEY, J., delivered the opinion of this court.

All objections to vouchers Nos. 1, 8, 9, 13, 18, and 32, for which credits were allowed *Marein T. Lamar*, administrator *cum testamento annexo* of *James Lamar*, in his account settled with the orphans court of *Prince George's* county, on the twenty-fifth of April, in the year 1843, being waived and withdrawn, this court are only called upon therefore to decide whether the objections taken to vouchers Nos. 4, 10, 39, and 40, were properly overruled by the orphans court. Of all these vouchers or claims the appellee was called upon by the appellants to offer full proof, and to the voucher No. 4 the plea of limitations is interposed as a bar.

In this attitude of the case the first question presented for our determination is, have the appellants the right of prefering such a plea, before the orphans court, in bar of the appellees claim?

To support the affirmative of this proposition we have been referred to the case of *Shrewen vs. Vanderhorst*, 1 *Russ. & Mylne*, 347, where after a decree to account, on a bill filed by a residuary legatee against an executor, upon a creditor's filing

46 v. 1

a claim, the *Lord Chancellor* decided that it was competent for the complainant (the residuary legatee) to plead the statute of limitations. In delivering his opinion he states that "the question here is, whether, when a decree has been pronounced, taking possession of the estate, and vesting it in the court for the purpose of distribution, a decree by which the accounts are directed to be taken, and the assets are to be administered in the masters office, and after which the common law must be altogether silent," the plea must not be considered fatal? And in the same case, in 2 *Russ. & Mylne,* 75, the Master of the Rolls, who allowed the residuary legatee to plead the statute of limitations to the creditors claim, "stated the ground of his decision to be, that after a decree the executor was not at liberty to do any act which affected the relative rights of creditors." The same reasons do not exist for receiving such a plea, from such a source, in proceedings before the orphans court. No decree or order which the orphans court might pass, in the premises, would divest the courts of law of jurisdiction over the same subject matter, nor would it thence follow that the common law must thereafter "be altogether silent;" or, in the language of the Master of the Rolls, would the executor be deprived of the "liberty to do any act, which affected the relative rights of creditors." The grounds upon which the case of *Shrewen vs. Vanderhorst* was decided, being wholly inapplicable to proceedings before the orphans court, can have no influence upon the opinion of this court in the case now before it. Does the fact of the executor being the creditor, claimant, change the nature of the case? We think it does not. If the appellants can, in their suit at law now pending, in any way, defeat the appellees claim by a plea of limitations, no decision which the orphans court could have made in the case before it could destroy or impair their power of doing so. We do not therefore regard the plea of limitations (technically considered as such) applicable to proceedings before the orphans court, in relation to the claims of creditors. That tribunal may, it is true, look to the fact of such a bar as evidence to be weighed with all other testimony in relation to any claim, in deter-

mining on its justice and the propriety of passing or rejecting it; but as a technical statutory bar, no legatee or creditor has in the orphans court authority to interpose it against a creditor's claim, that power, by our testamentary system, being vested in executors and administrators. In what we have said we desire it to be understood that we have intimated no opinion that, in any proceeding at law by a legatee, distributee, or creditor, it is competent for them to defeat the claims of creditors of the deceased by the plea of limitations.

Voucher or claim No. 4, it would appear from the endorsement upon it, had been passed by the orphans court anterior to the objection filed by the appellants to its allowance in the administration account then about to be settled by the appellee before that court. The appeal in this case being taken to the decree and order overruling the objections in the appellants petition, and allowing and passing the administration account of the appellee, and not to the order of passage, endorsed on voucher No. 4, it is insisted by the appellee that, independently of the proof offered for its establishment and inserted in the record, the order of passage endorsed upon it is *prima facie* evidence of its correctness, and in the absence of all proof to the contrary, fully warranted the decree and order of the orphans court as far as that voucher is concerned. The position thus insisted on is directly in conflict with the decision of this court in the case of *Lee vs. Lee and Welsh,* 6 *G. & J.* 316, where the orphans court were called on by the petition of the person interested as residuary legatee to re-examine and adjudicate anew upon a claim, of one of two executors, against the deceased, which had been passed by the court, but remained unpaid. Upon such a review this court say that the passage of the claim "adds nothing to its intrinsic merits or authenticity, when reviewed, as it was by the orphans court, upon the proceedings before it." That "the claim having been contested before payment, its passage by the orphans court is no evidence of its correctness. It must be supported by testimony substantially sufficient for its establishment before a jury." The case now before us has been brought up on proceedings in no

wise distinguishable from those in the case of *Lee vs. Lee and Welsh*, and can by no ingenuity be withdrawn from the operation of the principles there established.

But it has been asserted by one of the counsel for the appellee that the case of *Lee vs. Lee and Welsh* is in obvious conflict with the case of *Stevenson and al. vs. Shriver and wife*, 9 *Gill & John.* 324, and is overruled by it. After a careful perusal of both the cases we can discover nothing by which this assertion can be sustained. That part of the court's opinion, in the latter case, in which it is alleged this inconsistency appears, is where the court, in discussing the question, whether, where the estate is insufficient for the payment of debts, a creditor has a right to appeal from an order of the orphans court passing a claim of an executor or administrator, says : "Conceding, as is alleged, that the passage of the claim of an executor or administrator, is not conclusive upon a distributee or creditor suing such executor or administrator, and leaves him at liberty to shew the illegality of the allowance thus made ; yet it so increases the difficulty of so doing that such an order cannot be said not to impair the rights of a distributee or of a creditor, where the assets of the deceased are inadequate to the payment of debts. The allowance of the claim is *prima facie* evidence of its correctness, and the executor or administrator need offer no further evidence to sustain it. The *onus probandi* is shifted from the executor or administrator to the creditor." These remarks of the court, in the latter case, are perfectly consistent with its decision in the former, referring to a proceeding in a different tribunal, where the question would be, not whether the orphans court acted correctly in passing the claim, but whether the claim, according to the proofs in the cause, ought to be sustained or enforced in a court of justice? The order of the orphans court would be offered but as *prima facie* evidence ; as such it is the decision of a court of competent jurisdiction, and must be respected accordingly. It forms no part of the issue in the cause, but coming collaterally in question to the extent to which it is an adjudication, it must be recognised. In the case of *Lee vs. Lee*

*and Welsh,* the very question in issue was, whether the orphans court ought to pass the claim. It was taken up by the orphans court *de novo,* and consequently its judgment should have been formed upon the evidence adduced by the parties litigant, and not upon any opinion it may have theretofore formed or expressed upon the *ex parte* testimony formerly before it. And in accordance with these views, and not in conflict with the case of *Lee vs. Lee and Welsh,* was the case of *Stockett's executor vs. Jones and wife,* decided in 10 *Gill & Johnson,* 276.

Does the record present evidence sufficient, in point of fact, to establish the charges in voucher No. 4, and warrant the orphans court in overruling the objection made to their allowance, is our next inquiry? To the admissibility of the testimony offered for this purpose no exception has been taken. That being the case, we think it does satisfactorily establish the first, second, third, fourth, seventh and eighth items of charge in voucher No. 4. But in support of the fifth and sixth charges in that voucher, as appears by the record, no proof having been offered, the orphans court erred in allowing them.

The orphans court also erred in allowing voucher No. 10, the appellee having wholly failed to offer the requisite proof to sustain it. It is true he has exhibited an account, with a receipt upon it, purporting to have been given by or on account of the sheriff of *Prince George's* county, for the apprehension fee and jail fees of negro *Hanson,* a slave of *Gustavus Lamar,* with a portion of whose estate, as the administrator thereof, *James Lamar* has been charged by the appellants. But no proof has been offered of the execution of the receipt, or that negro *Hanson* had ever runaway or been confined in jail as a runaway.

The orphans court were in error, also, in allowing voucher No. 39, purporting to be an open account of *C. C. Hyatt,* against the "estate of *James Lamar,*" commencing in June, 1838, and terminating in December 1840, with a certificate of *C. C. Hyatt* that it had been settled by *Marein T. Lamar.* Of this claim there is not to be found in the record one particle of evidence to show that a single article in the account was ever

sold or delivered to any body.    Nor is there any inventory or other proof of the personal property of *James Lamar*, from which this court might form even a conjecture that the articles charged were supplies necessarily provided by the administor, in a due course of administration, for the sustenance, comfort or preservation of the estate confided to his charge.

The total absence of all evidence as to the nature and circumstances of the personal estate of the deceased; or that the articles consumed, for which the credit is claimed, formed any part of it; or what was the property appraised in the inventory which did not belong to him; or to whom it did belong, should have induced the orphans court to disallow voucher No. 40.    Without such proof it is impossible for this court to say that the allowance claimed ought to have been made.    In sanctioning such an allowance the orphans court were therefore in error.    But is said that no such proof is necessary, because the articles for which a credit is claimed in this voucher being of such a nature as that they must have been consumed in their use by the legatee during her single life, and were therefore her absolute property, the appellants have no right to complain of the allowance which has been made for them.    Whether they have a right to complain, or not, this court will not venture to determine, unless the entire will of the testator, *James Lamar*, be before it.    In *Evans and al. vs. Iglehart and al.*, 6 *Gill & Johnson*, 174, this court have said, in determining on the rights of a residuary legatee for life with a bequest over to others, that whether the legatee for life "ought to enjoy his (the testator's) personal estate specifically, or to receive nothing more than the interest on its value, is purely a question as to the intention of the testator, in conformity to which his will must be executed, there being no unbending principle of law to control such intention, whether it be in the one way or the other."    To pronounce what, in this respect, was the intention of *James Lamar*, the testator, upon a record which does not contain his will, cannot be expected of the court.    But even if the will were to be found in the record, and our construction of it be what it may, it could

throw no light upon the question, nor enable us to determine on the propriety of the allowance made to the appellee for property appraised in the inventory which was no part of the personal estate of the testator.

We are prepared to ratify and affirm the decree and order of the orphans court, allowing and passing the administration account of the appellee, except the allowances in said account numbered 10, 39 and 40, and the sum of five hundred and thirty-seven dollars and eighty-six cents, being part of allowance number four in said account, and consisting of the fifth and sixth items of charge in voucher No. 4, as to which said excepted allowances and items the said decree and order of the orphans court is hereby reversed, but without prejudice to the rights of the parties in relation thereto. And this cause is to be remanded to the orphans court of *Prince George's county*, that such further proceedings may be had therein as may be necessary to carry into effect the decree of affirmance in this court; and that it may take such further evidence in relation to said excepted allowances and items as the parties may see fit to offer; and that the said court may finally order and decree thereon as the nature of the case may require. As to all costs heretofore incurred in this court, and in the said orphans court, each party shall pay its own costs.

DECREE REVERSED IN PART, AND CAUSE REMANDED.